# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

BRIAN LOCASCIO,

      Plaintiff,

v.

                                  CIVIL ACTION NO.
                                  1:14-cv-00207-TWT-RGV

BBDO ATLANTA, INC.,

      Defendant.

## ORDER FOR SERVICE OF NON-FINAL
## REPORT, RECOMMENDATION, AND ORDER

Attached is the Non-Final Report, Recommendation, and Order of the United States Magistrate Judge made in this action in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b), and this Court's Local Rule 72.1.  Let the same be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of the receipt of this Order.  Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing

for review by the district court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review. United States v. Slay, 714 F.2d 1093 (11th Cir. 1983) (per curiam).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the district court after expiration of the above time period.

**IT IS SO ORDERED**, this 1st day of August, 2014.

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

BRIAN LOCASCIO,

      Plaintiff,

v.

BBDO ATLANTA, INC.,

      Defendant.

CIVIL ACTION NO.
1:14-cv-00207-TWT-RGV

## MAGISTRATE JUDGE'S ORDER AND
## NON-FINAL REPORT AND RECOMMENDATION

Plaintiff Brian Locascio ("Locascio"), brings this action against defendant

BBDO Atlanta, Inc. ("BBDO"), alleging retaliation in violation of 42 U.S.C. § 1981 ("§

1981"). [Doc. 5].[1]   BBDO has filed a motion to dismiss Locascio's amended

complaint for failure to state a claim, [Doc. 7],[2] which Locascio opposes, [Doc. 9].

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

[2] BBDO also filed a motion to dismiss Locascio's original complaint, [Doc. 3], but that motion has been rendered moot by Locascio's filing of an amended complaint, [Doc. 5].  Under Rule 15 of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days after service of a motion under Rule 12(b).  Fed. R. Civ. P. 15(a)(1)(B).  An amended pleading "supersedes the former pleading" such that "'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'"  Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006) (footnote omitted) (citation omitted).  See also Fritz v. Standard Sec.

For the reasons that follow, it is **RECOMMENDED** that BBDO's motion to dismiss the amended complaint, [Doc. 7], be **DENIED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Locascio began working for BBDO, a national advertising agency, in September of 2006.  [Doc. 5 at 2-3].[3]  From January of 2011 until his termination in September of 2013, Locascio was assigned to work full-time as the Creative Director for BBDO's client account with the Georgia Lottery Corporation ("GLC"), which was one of BBDO's most lucrative clients.  [Id.].  Locascio's primary client contact with GLC was GLC's Creative Mananger, James Hutchinson ("Hutchinson").  [Id. at 3]. While he was assigned to the GLC account, Locascio alleges that Hutchinson

---

Life Ins. Co., 676 F.2d 1356, 1358 (11th Cir. 1982) (citations omitted) ("Under the Federal Rules, an amended complaint supersedes the original complaint."). Locascio's amended complaint, [Doc. 5], supersedes the original complaint, [Doc. 1], because it was filed as a matter of course within the requisite 21-day period, and the original complaint is no longer the operative pleading before the Court.  See Robinson v. Wild Wing Café, 1:11-cv-01579-SCJ, at [Doc. 42 at 8-10 (citations omitted)] (N.D. Ga. Dec. 19, 2011); see also Bradley v. Dekalb Cnty., Ga., Civil Action File No. 1:10–CV–0218–TWT–GGB, 2010 WL 4639240, at * 2 (N.D. Ga. May 17, 2010), adopted by 2010 WL 4638887, at *1 (N.D. Ga. Nov. 4, 2010) ("Defendants' first motion to dismiss has been rendered moot by the filing of Plaintiff's Amended Complaint."); Cordell v. Pac. Indem., No. CIV A. 4:05CV167-RLV, 2006 WL 1935644, at *2-4 (N.D. Ga. July 11, 2006) (dismissing as moot defendants' motion for partial summary judgment because it was filed before plaintiff filed his amended complaint).  Accordingly, BBDO's motion to dismiss the original complaint, [Doc. 3], is **DENIED** as **MOOT**.

[3] The factual background is taken from the pleadings and does not constitute findings of fact by the Court.

"routinely insisted" that Locascio ensure that BBDO hire contractors, including directors, freelancers, vendors and production companies, on the basis of race and gender. [Id. at 4]. Specifically, Locascio alleges that Hutchinson "made clear that he required black or African-American persons [to be] hired for specific jobs to meet 'diversity' goals," and that, on some occasions, Hutchinson presented Locascio with a "detailed breakdown of the number of black contractors to use for GLC advertising projects." [Id.].

Locascio alleges that he alerted BBDO to Hutchinson's "diversity requirements," which were already well-known to BBDO, and that he "expressly objected to Hutchinson's insistence that Locascio make hiring and contracting decisions based on race," but that BBDO "took no action to prevent Hutchinson's discriminatory conduct." [Id.]. Locascio also complained to BBDO's Human Resources Officer, Debbie Lindner ("Lindner"), that he believed it was unlawful to hire contractors on the basis of race in accordance with Hutchinson's directives, [id. at 4], but BBDO "rejected [his] concerns on the stated belief that making hiring decisions based on race was lawful to achieve or maintain 'diversity,'" [id. at 4-5].

Locascio alleges several specific instances during the summer of 2013 in which he complained to BBDO about hiring contractors on the basis of race. See [id. at 5-8]. In particular, Locascio describes an incident when he and other members of BBDO's

creative team selected a "trusted freelance contractor" by the name of Matthew Crouch ("Crouch"), to work on a GLC commercial assignment in July of 2013. [Id. at 5]. Locascio alleges that when BBDO sought Hutchinson's approval to hire Crouch, who was white, Hutchinson "insisted" that they hire William Robert Ray ("Ray"), who was black. [Id.].[4] Locascio further asserts that when a certain member of BBDO's creative team "openly questioned the legality of Hutchinson's demand," the Project Manager of BBDO responded by e-mail that "they did not have time to investigate the legality of Hutchinson's mandate." [Id.]. Locascio further alleges that "BBDO directed [him] to acquiesce to Hutchinson's discriminatory demand," that he hire Ray as a freelance designer "because of his race," and "not because of his abilities or qualifications[.]" [Id. at 5-6]. Locascio asserts that Crouch was also hired "to essentially perform the work ostensibly assigned to Ray." [Id. at 6].

Later that month, Hutchinson "again insisted that BBDO hire Ray" to work on another GLC project that had been assigned to Locascio's creative team. [Id.]. Hutchinson allegedly told BBDO that "he viewed the hiring of Ray as a 'diversity issue.'" [Id.]. Locascio and the other members of BBDO's creative team then received an e-mail from BBDO employee Danielle Claiborne ("Claiborne"), stating

---

[4] According to Locascio, "[i]t was BBDO's practice to obtain approval from Hutchinson of all contractors before hiring them to work on the [GLC] project, including all freelance designers." [Doc. 5 at 5].

4

that Hutchinson had told Claiborne that "'we need to get [] Ray in here to do the freelance," as "[Hutchinson] feels it's an issue of diversity.'" [Id.]. Locascio responded to the e-mail, asking for confirmation and noting that "'this is about to become a huge issue.'" [Id.]. In reply, Claiborne "confirmed Hutchinson's requirements," and added that "'[Hutchinson had] specifically mentioned AA [African-American] designers in terms of getting diversity . . . .'" [Id. (second and third alterations in original)].

Locascio once again approached Lindner in the Human Resources office, and complained about the "use of race in hiring," with specific reference to Hutchinson's "directive to hire Ray." [Id. at 7]. Locascio ultimately "refused to hire Ray, because he believed that doing so, based solely on Ray's race, constituted unlawful racial discrimination." [Id.]. Locascio alleges that after Hutchinson learned of his refusal to hire Ray, Hutchinson stopped returning Locascio's calls and e-mails and otherwise ceased communicating with Locascio about BBDO's ongoing advertising projects with GLC. [Id.]. As Hutchinson's "lack of communication negatively impact[ed] [Locascio's] ability to perform his job duties," Locacsio "again informed Lindner that he objected to hiring contractors based on their race and that he specifically had objected to hiring Ray." [Id.]. Locascio also informed Lindner that "his refusal to hire contractors for GLC projects based on race was the reason that

5

Hutchinson was no longer communicating with him," and that "BBDO's tolerance of [Hutchinson's] discriminating practice was impacting Locascio's ability to do his job." [Id. at 7-8].

Following this complaint, BBDO removed Locascio from the GLC account and reassigned him to "'new business'" in August of 2013. [Id. at 8]. Locascio alleges that "BBDO knew at the time it transferred [him] away from the GLC account that there was insufficient 'new business' for him to work on," and that, on September 30, 2013–within one month of his reassignment–BBDO terminated his employment on the purported basis that there was "no work for him." [Id.]. Locascio asserts that BBDO's actual purpose in removing him from the GLC account was to "terminate his employment and avoid having to complain to GLC about Hutchinson and his unlawful practices," [id.], and that BBDO's termination of Locascio was in fact "calculated to send a message to other [BBDO] employees that in order to remain employed, [] they would have to participate in unlawful and discriminatory employment practices," [id. at 10].

Based on these events, Locascio filed a complaint against BBDO on January 23, 2014. [Doc. 1]. After BBDO moved to dismiss the complaint, see [Doc. 3], Locascio filed a response in opposition to the motion to dismiss, [Doc. 6], as well as a first amended complaint, [Doc. 5]. On March 31, 2014, BBDO moved to dismiss

the first amended complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Doc. 7].  Locascio has filed a response in opposition to the motion to dismiss the amended complaint, see [Doc. 9], to which BBDO has filed a reply, [Doc. 10].  The sole claim of the amended complaint is that BBDO retaliated against Locascio, in violation of § 1981, by terminating his employment as a result of his opposition to BBDO's apparent racially discriminatory employment practices.  See generally [Doc. 5].

## II.  STANDARD ON MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action when the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering BBDO's motion to dismiss, the Court must accept Locascio's allegations as true and construe the complaint in Locascio's favor. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (second alteration in original) (citations and internal marks omitted).

7

Furthermore, "Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  Broner v. Wash. Mut. Bank, FA, 258 F. App'x 254, 256 (11th Cir. 2007) (per curiam) (unpublished) (quoting Fed. R. Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555 (citation omitted), and the complaint must contain "enough facts to state a claim to relief that is plausible on its face," id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  Thus, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.

In sum, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," and "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 678-79 (citation omitted); see also id. at 679 ("[W]here the well-pleaded facts do

8

not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").

## III.  DISCUSSION

BBDO moves to dismiss the first amended complaint, [Doc. 7], arguing that Locascio has failed to state a plausible retaliation claim under § 1981 because he has failed to adequately allege that he engaged in statutorily protected activity, see [Doc. 7-1].  Locascio counters that the amended complaint "contains detailed factual allegations supporting his opposition" to BBDO's racially discriminatory hiring practices, and that, "[w]hen those allegations are viewed in [the] light most favorable to [Locascio]," the amended complaint "fully satisfies his pleading obligations under Rule 8 [of the Federal Rules of Civil Procedure]."  [Doc. 9 at 2-3].

### A.    Retaliation under § 1981

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts[5] . . . as is enjoyed by white citizens," 42 U.S.C. § 1981(a), and "prohibits an employer from retaliating against its employee in response to the employee's complaint of race-based

---

[5] "Make and enforce contracts" encompasses "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

discrimination," <u>Braswell v. Allen</u>, 586 F. Supp. 2d 1297, 1310 (M.D. Ala. 2008). <u>See also</u> <u>Porter v. Pipefitters Ass'n Local Union 597, U.A.</u>, No. 12–cv–9844, 2013 WL 5162206, at *3 (N.D. Ill. Sept. 12, 2013) (citation omitted) ("Section 1981 prohibits a defendant from taking adverse action against a plaintiff who has opposed the defendant's impairment of a contractual relationship on discriminatory grounds."). The same legal standard applies to retaliation claims under both Title VII and § 1981. <u>See</u> <u>Butler v. Ala. Dep't of Transp.</u>, 536 F.3d 1209, 1215 (11th Cir. 2008); <u>Goldsmith v. Bagby Elevator Co.</u>, 513 F.3d 1261, 1277 (11th Cir. 2008) (applying the same three-part test to retaliation claims under § 1981 and Title VII). <u>See also</u> <u>Wilson v. Farley</u>, 203 F. App'x 239, 247 (11th Cir. 2006) (per curiam) (unpublished) (<u>citing</u> <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998)) ("A claim brought under 42 U.S.C. § 1981 is analyzed under the same framework as a Title VII claim because both statutes have the same requirements of proof."). Accordingly, to establish a prima facie case of retaliation under § 1981, Locascio must show that (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) the materially adverse action was caused by his engaging in protected activity. <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 57 (2006); <u>Crawford v. Carroll</u>, 529 F.3d 961, 970 (11th Cir. 2008); <u>Gregory v. Ga. Dep't of Human Res.</u>, 355 F.3d 1277, 1279 (11th Cir. 2004) (per curiam); <u>Whitner v. Emory Univ.</u>, Civil

10

Action File No. 1:06-CV-1518-TWT, 2008 WL 4224407, at *19 (N.D. Ga. Sept. 12, 2008), adopted in part at *1.  However, a "§ 1981 complaint need not allege facts specific to make out a prima facie case, just enough factual matter to suggest retaliation." Melton v. Nat'l Dairy LLC, 705 F. Supp. 2d 1303, 1333 (M.D. Ala. 2010) (citations omitted); see also Uppal v. Hosp. Corp. of Am., 482 F. App'x 394, 396 (11th Cir. 2012) (per curiam) (unpublished) (third alteration in original) (citation and internal marks omitted) ("Although a . . . complaint need not allege facts sufficient to make out a classic . . . prima facie case, it must provide enough factual matter (taken as true) to suggest [retaliation]"); Liburd v. Bronx Lebanon Hosp. Ctr., No. 07 Civ. 11316(HB), 2008 WL 3861352, at *4 (S.D.N.Y. Aug. 19, 2008) (third alteration in original) (citations omitted) ("'[A] complaint in an employment [retaliation] lawsuit [need] not contain specific facts establishing a *prima facie* case of [retaliation] under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).'").

In this case, BBDO does not dispute that Locascio suffered a materially adverse action which was causally connected to his alleged protected activity, thereby satisfying the second and third elements of a prima facie case for retaliation under § 1981.  See generally [Doc. 7-1].  Instead, BBDO asserts that Locascio has not met the first prima facie element–protected activity–because he has not shown that

11

he reasonably believed that his employer was engaged in an unlawful employment practice.  See [id. at 1, 5-14].

### 1.   Protected Activity

In order to state a claim for retaliation under § 1981, "a plaintiff must allege a defendant retaliated against him because the plaintiff engaged in statutorily protected activity."  Jimenez v. Wellstar Health Sys., 596 F.3d 1304, 1311 (11th Cir. 2010) (citation omitted).  "An employee engages in protected activity if he opposes an employment practice based on a good faith, reasonable belief that the practice violates Title VII or Section 1981."  Canty v. Fry's Elecs., Inc., No. 1:09–cv–3508–WSD, 2012 WL 1038611, at *5 (N.D. Ga. Mar. 27, 2012) (citation omitted) (citing Bryant v. U.S. Steel Corp., 428 F. App'x 895, 898 (11th Cir. 2011) (per curiam) (unpublished)).  "The 'opposition' must be made know[n] to the employer in the form of a complaint or some overt rejection of what the employee believes to be an illegally discriminatory practice or decision."  Chandler v. Infinity Ins. Grp., No. 2:12–cv–2870–TMP, 2014 WL 2547826, at *12 (N.D. Ala. June 4, 2014); see also Reynolds v. Golden Corral Corp., 106 F. Supp. 2d 1243, 1253-54 (M.D. Ala. 1999).

Thus, an employee may engage in protected activity by "voicing complaints of [racial] discrimination" to his employer, Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 715 n.2 (11th Cir. 2002), or by "refusing to follow a supervisor's order

to [engage in a discriminatory practice]," Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 277 (2009) (citation omitted); see also Reynolds v. Fed. Express Corp., No. 09–2692–STA–cgc, 2012 WL 1107834, at *24 (W.D. Tenn. Mar. 31, 2012) (footnote omitted) (noting that typical forms of protected opposition "include 'complaining about allegedly unlawful practices[ and] refusing to obey an order because the worker thinks it is unlawful under Title VII"). There is no requirement that the discriminatory practice opposed by the plaintiff be directed at the plaintiff himself, see Tucker v. Talladega City Schs., 171 F. App'x 289, 295 (11th Cir. 2006) (per curiam) (unpublished) (holding that "the claimed retaliation [need not] be directly due to the race of the plaintiff"); Kendall v. Cobb Cnty., Ga., 14 F. Supp. 2d 1342, 1346 (N.D. Ga. 1998), aff'd by 189 F.3d 486 (11th Cir. 1999) (citations omitted), but "[t]he opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual," Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959 (11th Cir. 1997) (quoting Silver v. KCA, Inc., 586 F.2d 138, 141 (9th Cir. 1978)).

In addition, "[t]o establish 'statutorily protected activity[,]' a plaintiff claiming retaliation for opposing an unlawful employment practice must demonstrate that []he believed, in good faith, that the challenged practice was unlawful and that this subjective belief was objectively reasonable in view of the facts, as measured against

13

existing substantive law." Sanford v. SCA, Inc., Civil Action No. 3:13cv153–MHT, 2014 WL 1329277, at *4 (M.D. Ala. Mar. 28, 2014), adopted at *1 (second alteration in original) (citing Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010); Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999)).  However, "the plaintiff 'need not prove the underlying claim of [racial] discrimination which led to [his] protest,' so long as []he had a reasonable good faith belief that the discrimination existed." Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994) (quoting Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir. 1989)).  In other words, "the employer's practice, which a plaintiff opposes does not in fact have to be unlawful . . . rather, the employee need only have a reasonable belief that the employer's practices are discriminatory." Danner v. Sumter Cnty. Bd. of Educ., No. 7:12–CV–02391–RDP, 2013 WL 754956, at *4 (N.D. Ala. Feb. 26, 2013) (citations and internal marks omitted). See also Clover, 176 F.3d at 1351 (holding that the conduct opposed need only be "close enough" to support an objectively reasonable belief of unlawful discrimination); Taylor v. Cardiovascular Specialists, P.C., Civil Action No. 1:11–cv–4521–TCB, 2014 WL 1004118, at *5 (N.D. Ga. Mar. 17, 2014) (internal marks omitted) (quoting Fine v. Ryan Int'l Airlines, 305 F.3d 746, 752 (7th Cir. 2002)) ("It is improper to retaliate against anyone for claiming a violation of Title VII [or § 1981] unless that claim is

'completely groundless.'  But a groundless claim is one resting on facts that no reasonable person possibly could have construed as a case of discrimination.").

The Court finds that the facts alleged in the amended complaint, when taken as true and construed in Locascio's favor, are sufficient to establish that Locascio's opposition to BBDO's allegedly race-based discrimination constituted protected activity under § 1981.  First, Locascio clearly manifested his opposition to the practice of hiring contractors based on race by complaining to BBDO's Human Resources department about the practice on several occasions, see [Doc. 5 at 4, 7-8], and by refusing to accede to Hutchinson's directive that he hire a particular freelance designer on the basis of race, [id. at 7 (alleging that he informed Lindner of "his refusal to hire contractors for GLC projects based on race")]—even after BBDO had already directed Locascio to "acquiesce" to Hutchinson's previous demand that Locascio hire that same designer on the basis of race, [id. at 5-6], and even though BBDO had already advised Locascio that it approved of such racially motivated hiring practices as a legitimate means to advance diversity in the workplace, [id. at 4-5].  See E.E.O.C. v. HBE Corp., 135 F.3d 543, 554 (8th Cir. 1998) (citing Moyo v. Gomez, 32 F.3d 1382, 1385 (9th Cir. 1994)) (holding that opposition "can include refusal to implement a discriminatory policy"); Husick v. Allegheny Cnty., Civil Action No. 07-1175, 2010 WL 1903748, at *14 (W.D. Pa. May 10, 2010)

15

(citing Crawford, 555 U.S. at  276) ("The Supreme Court has indicated that an employee may 'oppose' an unlawful act of discrimination simply by refusing to assent to it.").[6]

Locascio's repeated objections to BBDO's knowing adoption of Hutchinson's race-based hiring directives also show that he subjectively believed in good-faith that BBDO was engaged in an unlawful employment practice.  BBDO argues that Locascio did not have a good-faith belief that BBDO was practicing illegal discrimination, because Locascio "only complained to BBDO's Human Resources Officer once [Hutchinson] stopped communicating with him."  [Doc. 7-1 at 13]; see

_____

[6] BBDO argues that Locascio did not engage in protected opposition because his objections to BBDO's hiring practices were not based on any apparent racial discrimination, but on Locascio's own purported "decision to exclude minorities[.]" See [Doc. 7-1 at 8-9 (emphasis, citation, and internal marks omitted) (asserting that "[Locascio] is essentially arguing that he has a statutory right not to have BBDO contract with a minority if he so chooses and that his unilateral decision to exclude minorities from his team should be considered protected activity.")].  BBDO's argument finds no support in the allegations of the amended complaint, which must be accepted as true for purposes of the present motion to dismiss.  Locascio plainly alleges that the reason he opposed BBDO's practice of hiring contractors whom it knew that Hutchinson had selected based on race, was because he believed that the practice constituted unlawful racial discrimination, see [Doc. 5 at 4 (alleging that he "opposed the practice of hiring contractors based on race by, among other things, complaining to . . . Lindner . . . that he believed the practice to be unlawful"), 7 (alleging that he refused to hire on the basis of race because he "believed that doing so[] . . . constituted unlawful racial discrimination," and that he informed Lindner of "his refusal to hire contractors . . . based on race)], and nothing in the amended complaint even remotely suggests that Locascio's opposition to this practice was motivated by a "decision to exclude minorities" from BBDO.

also [id. at 14 (arguing that "Hutchinson's behavior was not racially offensive to [Locascio], such that [Locascio] felt the need to report that behavior to his employer, until Hutchinson was no longer communicating with [Locascio] and making [Locascio's] job difficult to complete")].  BBDO is mistaken:  Locascio clearly alleges that he complained to Lindner about the practice of hiring contractors based on race before Hutchinson ceased communicating with him.  See [Doc. 5 at 4, 7 (emphasis added) (alleging that he "opposed the practice of hiring contractors based on race by[] . . . complaining to . . . [Lindner] that he believed the practice to be unlawful," that he "*again* took his concerns to Lindner . . . . [and] complained to her about the use of race in hiring," and that, after making these complaints, Hutchinson cut off communication with him, and he then "took the matter to Lindner *once again*")].  And even when Locascio complained to Lindner after Hutchinson had stopped speaking with him, Locascio made it clear that he was not merely complaining about the resulting impact on his ability to do his job, but about "BBDO's tolerance of the discriminating practice" of "hiring contractors based on their race[.]"  [Id. at 7-8].

Locascio has also alleged facts showing that his subjective belief that BBDO was engaged in unlawful employment practices was objectively reasonable in light of existing substantive law.  Section 1981 prohibits "discriminat[ion] on the basis of race in the making and enforcing of contracts," Freeman v. Koch Foods of Ala., 777

17

F. Supp. 2d 1264, 1280 (M.D. Ala. 2011) (<u>citing</u> 42 U.S.C. § 1981(a)), and the allegations of the amended complaint plausibly establish the following facts for purposes of the pending motion to dismiss: (1) Hutchinson "routinely insisted" that BBDO hire contractors for the GLC account on the basis of race, [Doc. 5 at 4 (alleging that Hutchinson "required . . . black or African-American persons [to be] hired for specific jobs," and that he occasionally gave Locascio a "detailed breakdown of the number of black contractors to use for GLC advertising projects")]; (2) BBDO was aware of Hutchinson's racially discriminatory hiring requirements, [<u>id.</u> at 4, 7 (alleging that "Hutchinson's diversity requirements were well-known to BBDO," and that Locascio complained to BBDO about the requirements and the "use of race in hiring" on several occasions)]; and (3) BBDO expressly approved of Hutchinson's requirements and actively facilitated them by directing Locascio to comply with Hutchinson's demands that he hire contractors based on race, [<u>id.</u> at 4-6 (alleging that BBDO "took no action to prevent Hutchinson's discriminatory conduct"; told Locascio that it recognized hiring based on race as a lawful means to foster diversity; and "directed Locascio to acquiesce" to Hutchinson's "demand" that he hire a particular contractor on the basis of race)].  Assumed to be true and construed in Locascio's favor, these allegations are sufficient to warrant a reasonable belief that BBDO was engaged in an unlawful discrimination in violation of § 1981, and

Locascio has thus established that his opposition to that practice constituted protected activity.

Nevertheless, BBDO raises several arguments purporting to show that Locascio did not have an objectively reasonable belief that BBDO was engaged in an unlawful employment practice.  See [Doc. 7-1 at 6-13].  First, BBDO argues that Locascio could not have reasonably believed that the racially discriminatory hiring practice which he opposed was attributable to his employer, since "[he] only complain[ed] to BBDO about an alleged act of racial discrimination imposed by [Hutchinson,] a private individual[, ] and not by BBDO."  [Id. at 8 (citation omitted)].  Locascio responds that BBDO's argument overlooks the "numerous allegations in the [a]mended complaint alleging that [BBDO] adopted and enforced racially discriminatory hiring practices on the [GLC] account," and that BBDO not only "refused to investigate [Hutchinson's discriminatory hiring] practice or otherwise attempt to prohibit it," but "both acquiesced [in] and facilitated the . . . practice[,]" in "concerted action" with Hutchinson and GLC.  [Doc. 9 at 11-12].

Although Locascio appears to allege that the discriminatory hiring requirements for the GLC account originated with Hutchinson, it is clear from the face of the amended complaint that Locascio was not merely opposing Hutchinson's "insistence" that BBDO hire contractors on the basis of race, but also, and in

particular, BBDO's ratification and adoption of that practice.  See [Doc. 5 at 4, 6-8].

Indeed, taking Locascio's well-pled factual allegations as true, it appears that BBDO

not only failed to take any remedial action when confronted with Hutchinson's

directives that it hire contractors based on race, but actively facilitated the practice,

even to the point of requiring Locascio to implement it.  That the discriminatory

purpose of the practice may have originated with Hutchinson or the GLC is

immaterial.  An employer may no more engage in overt racial discrimination in

order to accommodate the requests of a third party or to maintain a lucrative client

relationship than to perpetuate its own discriminatory animus.  Nor may an

employer absolve itself from liability for its own act of racial discrimination by

shifting the blame to an outside party who instigated the practice that the employer

implemented.  See Smith v. CH2M Hill, Inc., 521 F. App'x 773, 775 (11th Cir. 2013)

(per curiam) (unpublished) (Title VII race discrimination claim held plausible where

plaintiff alleged that third party, motivated by discriminatory animus, "demanded"

that defendant-employers terminate plaintiff's employment, and that employers

"complied and terminated [plaintiff] with full knowledge of the discriminatory

motive"); Brooks v. D.C. 9 Painters Union, No. 10 Civ. 7800(JPO), 2013 WL 3328044,

at *4 n.2 (S.D.N.Y. July 2, 2013) (noting that discriminatory conduct by someone

other than employer may be attributable to the employer if the employer "actively facilitated such discrimination or in some other manner participated in it").

Moreover, the focus of Locascio's complaints to his employer was the "use of race in hiring," [Doc. 5 at 7], and it is undisputed that BBDO, not Hutchinson, had the ultimate authority to hire contractors to work on BBDO's advertising projects. Since BBDO was directly responsible for the hiring of contractors to work on the GLC account, and since Locascio specifically opposed the "practice of *hiring* contractors [for that account] based on race," [id. at 4 (emphasis added)]; see also [id. at 7], it follows that the practice opposed by Locascio was directly attributable to his employer. In other words, Locascio has plausibly established that his employer, not a private party, was responsible for the discriminatory hiring practice, because he has alleged facts showing that BBDO, not Hutchinson or the GLC, did the hiring.[7]

---

[7] BBDO relies heavily on Little, 103 F.3d 956, in support of its argument that Locacsio did not engage in protected activity, [Doc. 7-1 at 6-8, 10; Doc. 10 at 2], but Little is easily distinguishable from this case. The plaintiff in Little alleged that his employer retaliated against him after he complained about a single racially derogatory remark made by a co-worker eight months earlier. Little, 103 F.3d at 958. Because the remark was in no way attributable to an employer, the Eleventh Circuit easily concluded that the plaintiff's complaint about that remark did not constitute protected opposition to an unlawful employment practice. Id. at 959-60. Here, in contrast, the allegations of the amended complaint warrant a reasonable inference that the perceived discriminatory conduct was attributable to an employer, because Locascio has plausibly alleged that BBDO was directly responsible for the very conduct which he opposed—the hiring of contractors based on race. See [Doc. 5 at 4-7]. Cf. Silver, 586 F.2d at 141 & n.4, 142 (footnotes omitted) (finding no protected activity where plaintiff's "opposition[] . . . was expressed to a co-worker about that

BBDO next argues that Locascio could not have reasonably believed that his employer was engaged in unlawful discrimination because "no one was discriminated against" with respect to any of BBDO's hiring decisions. [Doc. 7-1 at 11]. In particular, BBDO points to the incident in which Hutchinson insisted that BBDO hire Ray as a freelance designer, arguing that, since BBDO also hired Crouch to perform the same work, "there [was] no underlying victim of discrimination," and therefore Locascio could not have had a reasonable belief that any discrimination existed. [Id. at 12]. However, since Locascio has adequately alleged that BBDO knowingly directed him to hire Ray, "not because of [Ray's] abilities or qualifications," but precisely "because of his race," see [Doc. 5 at 5-6], it cannot be said that "no reasonable person possibly could have construed [BBDO's actions as giving rise to] a case of discrimination," Taylor, 2014 WL 1004118, at *5 (citation and internal marks omitted); Walton v. Dougherty Cnty. Sch. Sys., 59 F. Supp. 2d 1297, 1304-05 (M.D. Ga. 1997) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 259 (1981)) ("Title VII and § 1981 impose[] liability upon a covered employer for deciding to hire an applicant based upon . . . race").

---

co-worker's own individual act of discrimination," but where "[i]t [was] clear that [plaintiff] perceived it and responded to it as the act of an individual co-worker, not in any way the act of [an] employer," and where neither "[the employer] or any of its supervisory personnel authorized [the co-worker's] remark or approved of it, either before or after the incident, and [the co-worker] was reprimanded by [plaintiff's employer] on the day the incident occurred").

BBDO's argument that there was no "victim" of the alleged discrimination in this case is also rendered dubious by Locascio's allegation that Hutchinson specifically required certain contractor positions for the GLC account to be given to black or African-American individuals, see [Doc. 5 at 4]; considering that there were necessarily a limited number of such positions available, Locascio could have reasonably believed that the advance reservation of a particular position for black or African-American individuals only, to the exclusion of all others, resulted in discrimination against the class of non-black individuals—including other racial minorities—who were otherwise qualified for the job but were intentionally excluded from consideration for employment on the basis of race.  And that belief would be rendered no less reasonable by the fact that Crouch was also hired as a freelance designer to perform the same job, since, even assuming that there were two such positions available on the GLC account, only one of which was set aside for black or African-American individuals, the possibility of obtaining employment in that particular position would be categorically foreclosed for other potential contractors simply because they happened to belong to a different racial class.  Thus, since Locascio makes specific factual allegations that BBDO engaged in the very conduct that § 1981 prohibits, it cannot be said that he lacked a reasonable belief that his employer was acting in violation of § 1981.  See Long v. Ford Motor Co., 496 F.2d

500, 504 (6th Cir. 1974) (footnote omitted) (quoting Griggs v. Duke Power Co., 401 U.S. 424, 430-31 (1971)) (finding applicable to § 1981 the Supreme Court's observation that Title VII proscribes '[d]iscriminatory preference for any group, minority or majority," and require[s] . . . the removal of artificial . . . barriers to employment [which] . . . discriminate on the basis of racial . . . classification'"); Nugent v. City of Houston, 159 F. Supp. 2d 529, 538-43 (S.D. Tex. 2001) (denying summary judgment on plaintiffs' § 1981 race discrimination claim where "[p]laintiffs [] presented evidence that race may have been a determinative factor in defendants' hiring policies" and that "defendants may have used unlawful affirmative action plans"); Lewis v. Rucker, 721 F. Supp. 929, 932 (S.D. Ohio 1989) (citation omitted) ("'Section 1981 is . . . not an affirmative action program.  It is an equalizing provision, seeking to ensure that rights do not vary according to race.'").  See also Dea v. Wash. Suburban Sanitary Comm'n, 11 F. App'x 352, 357-63 (4th Cir. 2001) (unpublished) (employee engaged in protected activity where he had objectively reasonable belief that his employer's "affirmative action policy, which was to promote a qualified minority candidate if one was available even though that candidate was not the best qualified for the job," was an unlawful employment practice); Commonwealth of Pa. v. Glickman, 370 F. Supp. 724, 736 (W.D. Pa. 1974) (citing 42 U.S.C. 2000e-2(j)) ("Title VII . . . clearly prohibits all hiring on the basis of

24

race. Under the Act, no minority group member may be discriminated against *or hired* on the basis of race.").

Finally, BBDO argues that Locascio's belief that it was unlawful for BBDO to hire contractors for the GLC account on the basis of race was not objectively reasonable in light of existing substantive law because the GLC is statutorily mandated to encourage participation by minority businesses, pursuant to O.C.G.A. § 50-27-14. [Doc. 7-1 at 12-13]. However, nothing in that statute mandates, or even permits, the GLC to make hiring decisions on the basis of race. To the contrary, the statute provides that the GLC should "encourage participation by minority businesses," and that it is therefore "authorized and directed to undertake training programs and other educational activities to enable such minority businesses to compete for contracts on an equal basis." O.C.G.A. § 50-27-14. The statute thus envisions that the GLC will work to give minority businesses equal footing in bidding for employment contracts on the basis of their qualifications and training, not on the basis of race.

In any event, "[u]nder the Supremacy Clause, any state law that conflicts with federal law is preempted." Rine v. Imagitas, Inc., 590 F.3d 1215, 1224 (11th Cir. 2009) (citing Gibbons v. Ogden, 22 U.S. 1 (1824)); see also id. (quoting Gade v. Nat'l Solid Wastes Mgmt. Ass'n, 505 U.S. 88, 98 (1992)) (noting that "[c]onflict arises 'where

compliance with both federal and state regulations is a physical impossibility or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'"); Brogdon ex rel. Cline v. Nat'l Healthcare Corp., 103 F. Supp. 2d 1322, 1340 (N.D. Ga. 2000) (alteration in original) (citation and internal marks omitted) ("[F]ederal law . . . preempts the state law to the extent that the ordinary application of the two laws creates a conflict."). Thus, even if the Court were to construe the statute as BBDO contends, Locascio's belief that his employer was engaged in unlawful employment practices would be no less reasonable, since Locascio could then reasonably believe that the statute would be preempted by the protections of § 1981. See Huddleston v. R.J. Reynolds Tobacco Co., 66 F. Supp. 2d 1370, 1377 (N.D. Ga. 1999) (citation omitted) (quoting Goodlin v. Medtronic, Inc., 167 F.3d 1367, 1370-71 (11th Cir. 1999)) ("[A]ny state law that conflicts with a federal law is preempted by the federal law; the state law is 'without effect.'").

In sum, Locascio has alleged facts plausibly suggesting that BBDO was responsible for racially discriminatory employment practices by, among other things, knowingly directing Locascio to hire contractors on the basis of race pursuant to Hutchinson's instructions. Because § 1981 prohibits that conduct, Locascio's good-faith belief that BBDO was engaged in an unlawful employment practice was "objectively reasonable in view of the facts, as measured against

26

existing substantive law." <u>Sanford</u>, 2014 WL 1329277, at *4 (citation omitted). And even if the conduct opposed by Locascio was not actually unlawful, it was "close enough to support an objectively reasonable belief that it [was]," <u>Clover</u>, 176 F.3d at 1351, which is all that is required to establish protected opposition. <u>See</u> <u>Taylor v. Cardiovascular Specialists, P.C.</u>, 1:11-cv-04521-TCB-RGV, at [Doc. 62 at 62] (N.D. Ga. Dec. 11, 2013), adopted by <u>Taylor</u>, 2014 WL 1004118, at *7 (citation and internal marks omitted) ("[A] plaintiff's opposition is protected provided it was based upon a good faith belief that a Title VII [or § 1981] violation occurred, even if no violation actually took place."); <u>Melton</u>, 705 F. Supp. 2d at 1332 (citations omitted) ("[I]n order to engage in protected activity, the underlying act complained of need not, in fact, violate § 1981; but rather, the employee merely needs to have a reasonable belief that the employer has engaged in unlawful employment practices."). Accordingly, the "factual assertions [of the amended complaint] satisfy the pleading standard required to establish that [Locascio] engaged in statutorily protected activity," <u>Danner</u>, 2013 WL 754956, at *4, and Locascio has thus adequately alleged the first prima facie element to support a claim of retaliation under § 1981.

### 2.   <u>Materially Adverse Action & Causal Connection</u>

As stated previously, it is undisputed that Locascio has satisfied the remaining elements to state a viable retaliation claim. Locascio's termination from

employment clearly constitutes a materially adverse action, see Burlington N., 548 U.S. 53, 57 (2006) (stating that termination is an adverse employment action), and the time frame presented in the amended complaint likewise establishes sufficient temporal proximity to show a causal connection between his termination and protected activity.  See [Doc. 5 at 6-8 (alleging that he complained to Lindner about perceived racial discrimination several times after July 19, 2013, that he was reassigned to "new business" sometime in August of 2013, and that he was terminated from employment on September 30, 2013)]; Robinson v. LaFarge N. Am., Inc., 240 F. App'x 824, 829 (11th Cir. 2007) (per curiam) (unpublished) (citing Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1291 (11th Cir. 2000)) (finding that causation was sufficiently alleged where adverse action occurred about two months after protected activity).  See also Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533  (2013) (noting that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "require[] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer"); Bechtel Constr. Co. v. Sec'y of Labor, 50 F.3d 926, 935 (11th Cir. 1995) (citation omitted) ("Proximity in time is sufficient to raise an inference of causation."); Soloski v. Adams, 600 F. Supp. 2d 1276, 1362 (N.D. Ga. 2009) (footnote and citations omitted) (quoting Goldsmith v. City of Atmore, 996

F.2d 1155, 1163 (11th Cir. 1993)) ("'At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action.'").  The Court thus finds that the allegations of Locascio's amended complaint "provide enough factual matter (taken as true) to suggest [retaliation]," Uppal, 482 F. App'x at 396 (second alteration in original) (citation and internal marks omitted), and Locascio has therefore alleged a plausible retaliation claim under § 1981, in conformity with the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

## IV.  CONCLUSION

For the foregoing reasons, BBDO's motion to dismiss the original complaint, [Doc. 3], is **DENIED** as **MOOT**, and it is **RECOMMENDED** that BBDO's motion to dismiss Locascio's amended complaint, [Doc. 7], be **DENIED**.

**IT IS SO ORDERED** and **RECOMMENDED**, this 1st day of August, 2014.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED  STATES  MAGISTRATE  JUDGE

29